UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALVIN BRUCE ERICKSON,<br><br>             Plaintiff,<br><br>   v.<br><br>RANDY BLADES, APRIL DAWSON, CATHERINE FITZGERALD, JAN EPP, BARBARA JOHNSTON, DR. McHUGH, ANDY MACHIN, BRENT REINKE, RONA SIEGERT, and CORRECTIONAL MEDICAL SERVICES,<br><br>             Defendants. | Case No. 1:09-CV-160-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

      Pending before the Court is Defendant April Dawson's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Dkt. 15), Plaintiff Alvin Bruce Erickson's Motion for Summary Judgment (Dkt. 17), and Plaintiff's Motion for Injunctive Relief or Restraining Order (Dkt. 30).

      Having fully reviewed the record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, in the interest of avoiding further delay, the Court shall decide this matter on the written motions, briefs

and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

## DEFENDANT'S MOTION TO DISMISS

**1. Standards of Law**

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA),[1] a prison inmate is required to exhaust all administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The important policy concern behind requiring exhaustion is that it "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 204. In addition, the *Jones v. Bock* Court cited with approval the observation that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation." *Id*. at 219 (internal citation omitted).

Where there is an "informal[]" and "relative[ly] simpl[e]" prison grievance system, inmates must take advantage of it before filing a civil rights complaint. *Woodford v. Ngo*,

---

[1] 110 Stat. 1321-71, *as amended*, 42 U.S.C. § 1997e, *et seq*.

548 U.S. 81, 103 (2006). "Proper" exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id*. at 85. Proper exhaustion is "defined not by the PLRA, but by the prison grievance system itself." *Jones v. Bock*, 549 U.S. at 218. Therefore, the "level of detail necessary in a grievance to comply with the grievance procedures" will be defined by the prison's own grievance policy. *Id.*

The United States Court of Appeals for the Ninth Circuit has instructed that an affirmative defense of failure to exhaust administrative remedies should be brought as an unenumerated 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust administrative remedies, a court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. The Court will treat Defendant's Motion as a 12(b) motion, and consider the evidence submitted by the parties that is relevant to the exhaustion issue.

Defendant bears the burden of proving failure to exhaust. *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005). The United States Court of Appeals for the Ninth Circuit has instructed that "pro se claims are construed liberally for purposes of the exhaustion requirement." *Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 873 (9th Cir. 2008) (immigration context) (relying on *Agyeman v. INS*, 296 F.3d 871, 878 (9th Cir. 2002) and *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**MEMORANDUM DECISION AND ORDER- 3**

## 2. Background Facts

### A. *Plaintiff's Factual and Procedural History*

On October 25, 2008, Plaintiff received a flu shot in his upper arm or shoulder area. (Plaintiff's Statement of Disputed Facts, Dkt. 18-2, p. 1.) Plaintiff alleges that Defendants April Dawson, Andy Machin, and Catherine Fitzgerald refused to treat his worsening symptoms. On November 20, 2008, Plaintiff was rushed to the hospital as a result of the infection in his shoulder and had to have surgery the next day. (Dkt. 18-2, pp. 1-2.)

Plaintiff alleges that he spent five days in the hospital and three weeks in the infirmary, during which time he alleges he was too ill to submit an offender concern form or grievance. Plaintiff was released from the infirmary in late December 2008, after which he filed several inmate concern forms and grievances, which are detailed herein below.

Plaintiff's civil rights complaint was filed on April 8, 2009. (Dkt. 3.) After initial review, he was permitted to proceed against Defendants April Dawson, Andy Machin, and Catherine Fitzgerald. Only April Dawson has waived service and appeared. Defendants Machin and Fitzgerald have not been served and have not appeared. Defendant Dawson alone has filed the motion to dismiss for failure to exhaust prison administrative remedies. However, because the exhaustion issues would be treated in the same manner if the additional defendants had appeared, the Court will consider it as to all three Defendants.

**MEMORANDUM DECISION AND ORDER- 4**

**B. *IDOC Grievance Policy***

At issue is whether Plaintiff properly exhausted the prison administrative grievance process prior to filing his civil rights lawsuit. Since February 2001, the IDOC has had Policy 316 in effect. It is a broad statement of IDOC policy on the grievance system as a means of solving inmate problems. (Affidavit of Christina Boulay, ¶ 3 & Exhibit A, Dkt. 15-3.)

The IDOC also has published Directives (past) and SOPs (current), which are specific guidelines implementing Policy 316. Depending on the age of the claim, either the Directive or the SOP governs: (1) from the time period through November 27, 2007, Directive 316.02.01.001 (Directive 316) was in effect; (2) on and after November 28, 2007, Standard Operating Procedure 316.02.01.001 (SOP) has been in effect. (*Id.*, Exhibits B & C.)

In this case, the SOP governs. Under SOP 316.02.001, the inmate first submits an offender concern form, next a grievance, and then an appeal of the grievance. (*Id.*, ¶ 4). When the subject of an inmate grievance is prison medical care, the grievance is routed through medical staff employed by the health care contractor, Correctional Medical Services (CMS). (*Id.*, ¶ 8.) The final appeal is reviewed by the CMS health services administrator. (*Id.*)

The prison officer receiving an offender concern form must respond within seven (7) working days of receipt. If the issue is not resolved or no response is received, then the inmate proceeds with the next step, submitting the grievance form. The grievance

**MEMORANDUM DECISION AND ORDER- 5**

form must be filed within thirty (30) days of the incident or problem that is the basis for the grievance. If the inmate is not satisfied with the grievance response, he must file an appeal within five (5) days of receiving the response. (*Id*., ¶¶ 5-9.)

### C. *Plaintiff's Use of Administrative Grievance System*

#### (1) *Forms Submitted re: Misdiagnosis*

On January 4, 2009, Plaintiff sent an offender concern form that said, "Why was I misdiagnosed?" to three persons: April Dawson (CMS Regional Director), Dr. Maghue (prison doctor),[2] and Andy Machin (medical administrator). (Plaintiff's Statement of Undisputed Facts, Exhibit B-1, Dkt. 17-3.)

The three persons responded as follows. Plaintiff was told, "Please provide more information. What is your concern?" by Andy Machin on January 7, 2009. (Exhibit B-3, Dkt. 17-3.) Plaintiff was given an apology and a partially illegible response by Dr. Maghue on January 17, 2009. (Exhibit B-2, Dkt. 17-3.) Plaintiff was directed to submit a Health Services Request to discuss his medical condition with the medical staff at his site by Dawson on January 24, 2009. (Exhibit B-1, Dkt. 17-3.)[3]

On February 2, 2009, Plaintiff submitted an offender concern form to Andy Machin stating, "please see attached grievance and documentation." (Exhibit B-6, Dkt. 17-3.) Plaintiff alleges that this offender concern form functioned merely as a cover sheet

---

[2] Or "McHugh" (see caption).

[3] Plaintiff also submitted Exhibit B-4, but it is too dark to be legible (Dkt. 17-3, p. 13), and he doesn't appear to rely on it in his argument (Dkt. 17-1 & 17-2).

**MEMORANDUM DECISION AND ORDER- 6**

to the grievance, that this was an appropriate way to submit a grievance during that time period, and that lock boxes were not yet installed to receive grievances.

On March 12, 2009, Plaintiff received from Andy Machin a response to the inmate concern form/coversheet of February 2, 2009: "You developed an infection in your shoulder. You were treated at St. Al's." (Exhibit B-6, Dkt. 17-3.) It is unclear whether this was merely a response to the inmate concern form/coversheet that could then be addressed in a grievance, whether this was a response to the grievance that could be appealed, or whether the grievance had been lost.

The database search of grievances shows that no grievance from Plaintiff was filed on February 2, 2009. (Boulay Aff., ¶ 14, Dkt. 15-3.) Plaintiff has not provided a copy of the grievance that was allegedly attached to the inmate concern form/coversheet. For argument's sake, the Court assumes that the grievance *was* attached.

Plaintiff followed up on the February 2, 2009 grievance. On March 16, 2009, Plaintiff filed an offender concern form with the grievance coordinator, stating that he filed grievances on "2-2-09 and 2-5-09." (Exhibit B-5, Dkt. 17-3.) In the offender concern form he said he received a response to the 2-5-09 grievance and was appealing it, but he had received no response to the 2-2-09 grievance. The reply Plaintiff received on March 17, 2009, was that only one grievance was in the system: 09-0000025 (a different grievance, discussed directly below). When he received the information that his February 2, 2009 grievance had not been received, Plaintiff did not resubmit the grievance or do anything further before filing his lawsuit.

**MEMORANDUM DECISION AND ORDER- 7**

### (2) *Forms Submitted re: Overcharging for Medication*

Plaintiff filed an offender concern form on January 27, 2009, disputing why he was being charged $9.00 when he was misdiagnosed and given the wrong medication. (Exhibit A-1, Dkt. 17-3.) The response was given to him on February 5, 2009. (*Id.*)

Plaintiff filed a grievance on February 5, 2009, in the same manner as the alleged February 2, 2009 grievance–addressed to Andy Machin, with an offender concern form/coversheet that stated, "See attached grievance and documentation." (Exhibit A-3, Dkt. 17-3.) The attached grievance was to dispute the $9.00 charge. (Exhibit A-5-A and A-5-B, Dkt. 17-3.) The response to the offender concern form/coversheet was "Grievances go to Grievance Coordinator to be processed and returned within 24 days: Rc'd 2/10/09 due back 3/6/09 to you." (Exhibit A-3, Dkt. 17-3.) When Plaintiff received a negative response, he file an appeal. (Exhibit A-5-B, Dkt. 17-3.)

The February 5, 2009 grievance is *not* at issue in this matter; it is included merely to prevent confusion and distinguish it from the February 2, 2009 grievance, which *is* at issue. In addition, it shows that Plaintiff did, in fact, know how to use the grievance system to exhaust his administrative remedies during the time period in question.

## 3. Discussion

The crux of the matter appears to be whether Plaintiff had a duty to do anything further once he received the response written on the inmate concern form/coversheet from Andy Machin or once he had been informed by the grievance coordinator that the prison had no record of the February 2, 2009 grievance, given that Plaintiff knew that an appeal

**MEMORANDUM DECISION AND ORDER- 8**

was required to exhaust administrative remedies. The record is undisputed that Plaintiff *received* a response to what appears to be the coversheet of the grievance *and* that Plaintiff received a second response informing him that his grievance had not been received. Therefore, Plaintiff had two items in his possession showing that the prison had responded, and that the grievance process was not yet completed. Plaintiff has provided nothing showing that he was diligent after this time period to resubmit the grievance or determine whether the response on the coversheet was the type of response that permitted him to proceed to the next level of appeal. It is obvious from the record that Plaintiff knew how to appeal, and intended to appeal if he obtained an unsatisfactory response.[4]

Plaintiff alleges that he went to see Jeri Hinkley, the IDOC paralegal at the time, and she told him, "There is no need to appeal grievances." She also told him to proceed to the next step of filing a tort claim. (Plaintiff's Statement of Undisputed Facts, Dkt. 17-2, p. 5.) Plaintiff has not presented the testimony of Jeri Hinkley in an admissible form. In addition, this advice was not from the grievance coordinator and was contrary to what Plaintiff knew about the grievance system, evident when he wrote: "In Feb. I filed the Grievances one on 2-2-09 and the other on 2-5-09. The later I have received back and have appealed. The one I put in on 2-2-09 I haven't heard anything back on yet. I have went [sic] ahead and filed a tort claim but I still need it back so I can appeal it and exhaust all remedies. Please look into this." (Dkt. 17-3, p. 14.) Thus, even if Plaintiff received this

---

[4] Defendant's Access System shows that Plaintiff filed 10 grievances between 2008 and 2010. (Boulay Aff. ¶ 7, Dkt. 15-3; Exhibit F, Dkt. 15-5.)

**MEMORANDUM DECISION AND ORDER- 9**

advice from Ms. Hinkley, the admissible evidence in the record shows that Plaintiff *nevertheless* knew that he needed to file an appeal to exhaust his remedies, especially after receiving a response that the grievance had not been received.

This case is unlike those where prison officials fail to respond at all or ignore an inmate's request for clarification about how the system worked. *See Boyd v. Corrections Corp. of America*, 380 F.3d 989 (6th Cir. 2004) (cataloging cases to support the principle that inmates do not need to do anything further to exhaust remedies if prison fails to respond because potential prison official defendants should not be able to avoid being sued by simply not responding to an inmate appeal). Here, Plaintiff received two responses from the prison and failed to either file an appeal or resubmit the original grievance in the face of his knowledge that appeal was an essential part of exhausting his administrative remedies. *See Felipe v. Surgees*, 2009 WL 277553, at *4 (E.D. Ca. 2009) (plaintiff had not properly exhausted remedies and could not rely on *Boyd* where he was advised that his appeal had been rejected, he was informed why his appeal had been rejected, and he was permitted to resubmit a properly filed grievance/appeal); *cf. Morris v. McGrath*, 2006 WL 2228944 (N.D. Ca. 2006) (plaintiff's filing of complaint in the midst of the appeal process was not excused where plaintiff knew that the reason for the delayed response was that prison officials were conducting an investigation of his claims).

Plaintiff filed two other grievances that can be liberally construed to complain of lack of medical treatment for his shoulder: No. 09-0000130, on July 28, 2009; and No.

**MEMORANDUM DECISION AND ORDER- 10**

0900000203, on November 6, 2009. (Boulay Aff., Exhibit F, Dkt. 15-5, pp. 25 & 33.) However, these were submitted after the filing date of the Complaint, and, thus, cannot act as proper exhaustion of administrative remedies.

 4. Conclusion

While Plaintiff has set forth a variety of arguments why his claims should be considered exhausted as a result of the lost grievance, or why exhaustion should be excused, none is sufficient under the factual circumstances of this case. Plaintiff ignored the information provided by the prison grievance system that his February 2, 2009 grievance had not been received. He also had received some type of response from the coversheet of that grievance, but did not file an appeal or otherwise follow up.

Defendant did not argue that the February 2, 2009 grievance was late, even though it appears to have been submitted more than 30 days after the incident at issue, and, therefore, Plaintiff cannot argue that he was not provided adequate time to recover from his surgery and file a grievance. None of Plaintiff's other arguments address why he did not adequately follow up with the loss of the February 2, 2009 grievance, such as resubmitting it, when he knew that a higher appeal was necessary to exhaust the prison grievance process. It is not enough to argue simply that the grievance system doesn't state what to do in the event of a lost grievance or he thought it was too late at that point to resubmit it. Likewise, it is not enough to follow the advice of a staff member who is not the grievance coordinator if one *knows* the advice is erroneous. The proper functioning of the grievance system is premised on the theory that the participants will act in good faith

**MEMORANDUM DECISION AND ORDER- 11**

to solve inmate problems. Plaintiff did not act in good faith when, even though it was apparent that "the ball was in his court," he did nothing more to properly bring his claims to the attention of prison officials by appealing or resubmitting the grievance.

Based on all of the foregoing, Defendant's Motion for Summary Dismissal will be granted. Because the other Defendants would be entitled to dismissal of the claims on the same basis as April Dawson, it would be futile to permit the suit to proceed against them. The Court will dismiss the entire action without prejudice.

## ORDER

**IT IS ORDERED:**

1. Defendant April Dawson's Motion to Dismiss (Dkt. 15) is GRANTED.

2. Plaintiff's Motion for Summary Judgment (Dkt. 17) is DENIED.

3. Plaintiff's Motion for Injunctive Relief and Motion for Restraining Order (Dtk. 30(a) and Dkt. 30(b)) are DENIED. Plaintiff alleges that he is being denied medical care at the current time. Any such allegations need to be properly exhausted and, if not resolved there, brought in a new lawsuit.

4. Plaintiff's entire case is DISMISSED without prejudice.

DATED: **August 12, 2010**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER- 12**